IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ASHLEY W.,[1]                                              Case No. 3:23-cv-00465-JR

        Plaintiff,                                 OPINION AND ORDER

        v.

COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION,

        Defendant.

RUSSO, Magistrate Judge:

      Plaintiff Ashley W. brings this action for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her applications for child's disability benefits and supplemental security income under the Social Security Act. All parties have consented to allow a Magistrate Judge enter final orders and judgement in this case in accordance with Fed. R. Civ. P. 73 and 28 U.S.C. § 636(c). For the reasons set forth below, the Commissioner's decision is affirmed, and this case is dismissed.

---

[1] In the interest of privacy, this opinion uses only the first name and initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

## BACKGROUND[2]

Plaintiff alleges disability as of her March 1999 birth due to a developmental disorder, depression, anxiety, irritable bowel syndrome, and acid reflux. Tr. 215, 224, 241. Her applications were denied initially and upon reconsideration. On January 8, 2019, a hearing was held before an Administrative Law Judge ("ALJ"), wherein plaintiff was represented by counsel and testified, as did a vocational expert ("VE"). Tr. 40-74. On April 9, 2019, the ALJ issued a decision finding plaintiff not disabled. Tr. 13-22. On April 2, 2020, the Appeals Council denied plaintiff's request for review. Tr. 1-6. Plaintiff then filed a complaint in this Court. Tr. 1753-54.

On October 7, 2021, the Court reversed the ALJ's decision and remanded the case for further proceedings. Tr. 1769; *see also* Tr. 1172 (Appeals Council remand order). Plaintiff raised two issues on appeal: (1) the weight afforded to the December 2018 and December 2017 opinions of treating nurse practitioner Stacy Hartline and state agency consulting source Ben Kessler, Psy.D., respectively; and (2) the validity of the VE's testimony given that online resources submitted post-hearing showed the identified representative occupations totaled less than 10,000 in the national economy. Tr. 1762, 1767. The Court affirmed as to the first issue but found that "the record is uncertain as to the number of jobs in the national economy." Tr. 1762-67.

On September 22, 2022, a second ALJ hearing was held. Tr. 1698-1728. On December 29, 2022, the ALJ issued a second decision finding plaintiff not disabled. Tr. 1680-90. After the Appeals Council denied her request for review, plaintiff again filed a complaint in this Court. Tr. 588.

---

[2] The record before the Court constitutes nearly 2800 pages, but with some incidences of duplication. Where evidence occurs in the record more than once, the Court will generally cite to the transcript pages on which that information first appears in its entirety.

## THE ALJ'S FINDINGS

At step one of the five step sequential evaluation process, the ALJ found plaintiff had not engaged in substantial gainful activity since the alleged onset date. Tr. 1682. At step two, the ALJ determined the following impairments were medically determinable and severe: "neurocognitive disorder, generalized anxiety disorder, depression, trauma disorder, attention deficit hyperactivity disorder." Tr. 1683. At step three, the ALJ found plaintiff's impairments, either singly or in combination, did not meet or equal the requirements of a listed impairment. *Id.*

Because she did not establish presumptive disability at step three, the ALJ continued to evaluate how plaintiff's impairments affected her ability to work. The ALJ resolved that plaintiff had the residual function capacity ("RFC") to "perform a full range of work at all exertional levels but with the following nonexertional limitations":

> [She] is limited to simple and detailed work that can be learned in 30 days or less, with no more than occasional changes in a routine work setting; can have occasional interaction with supervisors and coworkers, and no public interaction; and should have no exposure to hazards.

Tr. 1684.

At step four, the ALJ determined plaintiff had no past relevant work. Tr. 1688. At step five, the ALJ concluded, based on the VE's testimony, that there were a significant number of jobs in the national economy that plaintiff could perform despite her impairments, such as router, laboratory equipment cleaner, and routing clerk. Tr. 1689.

## DISCUSSION

Plaintiff argues the ALJ erred by failing to include a limitation in the RFC reflecting that she "would need extra breaks throughout a workday because of her psychological symptoms" in light of the 2018 medical opinion of Ms. Hartline and "significant records . . . from her earlier years," including from school, "childhood treatment at the Morrison Center," and "a

neuropsychological evaluation by Dr. Sacks on October 26, 2015." Pl.'s Opening Br. 5-6, 13-14 (doc. 19). In addition, plaintiff asserts the ALJ erred by affording weight to Dr. Kessler's December 2017 opinion[3] because it was rendered prior to the August 2018 letter from counselor Cheyenne Clun, the December 2018 opinion of Ms. Hartline, and plaintiff's engagement with vocational rehabilitation and failed work attempts.[4] *Id.* at 6-10.

As an initial matter, the only sources, medical or otherwise, to specify concrete functional limitations are Ms. Hartline and Drs. Kaper/Kessler.[5] Thus, while phrased slightly differently, plaintiff's current appeal essentially rehashes her prior allegations of error. *Compare generally id.*,

---

[3] Plaintiff also challenges the ALJ's reliance on the August 2017 opinion of state agency consulting source Scott Kaper, Ph.D., for the same reasons. *See, e.g.*, Pl.'s Opening Br. 8-9, 12 (doc. 19). The opinions of Drs. Kaper and Kessler are identical. *Compare* Tr. 87-89, 102-104 *with* Tr. 118-20, 134-36.

[4] Plaintiff also argues that the ALJ "did not address" the September 2022 lay testimony from her mother, Cynthia W. Pl.'s Opening Br. 10-11 (doc. 19). However, as plaintiff acknowledges later in her brief, the ALJ expressly addressed Cynthia W.'s lay statements but found they were "not fully consistent with the medical record." *Id.* at 12; Tr. 1687. Further, plaintiff does not challenge the ALJ's assessment of her subjective symptom testimony, which was discredited for similar reasons. *See Molina v. Astrue*, 674 F.3d 1104, 1114-17 (9th Cir. 2012) (superseded by regulation on other grounds) (any error in regard to third party statements is harmless where "the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony").

[5] Gary Sacks, Ph.D., found that plaintiff was not intellectually disabled based on the results of the Wechsler Adult Intelligence Scale (Fourth Edition) and Wechsler Abbreviated Scale of Intelligence (Second Edition). Tr. 656-58. His report clarified that the "primary cause" of plaintiff's unspecified adaptive impairments is "Neurodevelopmental Disorder associated with prenatal substance exposure," as opposed to her cannabis use or attention-deficit/hyperactivity disorder. Tr. 658-59. While the Morrison Center records show some increased symptoms in early 2015 and late 2016 (the latter corresponding with the death of her father), plaintiff was nonetheless "stable" and doing well on her medications by the time she graduated from high school. *See, e.g.*, Tr. 732, 744, 756, 768, 1235-38. And the August 2018 letter from Ms. Clun states only that plaintiff "has made improvements in her symptoms and has grown a lot" over the past year of treatment, including through the development of a number of effective coping strategies. Tr. 1373. Ms. Clun therefore requested that plaintiff's then-employer – i.e., Nordstrom – not reduce her hours due to anxiety, as that "essentially allows her to 'hide away' from her issues instead of 'face them and learn to deal with them'" using her coping skills. *Id.*

*with* Pl.'s Opening Br. (doc. 31, case no. 3:20-cv-00823-JR). Significantly, all of the evidence that she relies on now existed at the time of the previous ALJ and District Court decisions. *See* Tr. 45-46 (plaintiff's attorney discussing Dr. Sax's 2015 opinion, as well as plaintiff's school records, modified diploma, job coaching, prior work attempts, and "individual support plan and career development plan through County Assistance" at the January 2019 hearing). In other words, plaintiff does not rely on any new evidence or a change in controlling law, nor does she attempt to pursue any issue in relation to the medical evidence that could not have been raised as part of her prior appeal.

Accordingly, the procedural posture of plaintiff's case is problematic for two reasons. First, courts "need not and do not consider a new contention that could have been but was not raised on the prior appeal." *Munoz v. Cnty. of Imperial*, 667 F.2d 811, 817 (9th Cir. 1982); *see also Fogel v. Chestnutt*, 668 F.2d 100, 109 (2d Cir. 1981) ("[i]t would be absurd that a party who has chosen not to argue a point on a first appeal should stand better as regards the law of the case than one who had argued and lost"). Second, the law of the case doctrine precludes further consideration of the opinions of Dr. Kessler and Ms. Hartline. *See Stacey v. Colvin*, 825 F.3d 563 (9th Cir. 2016) ("[t]he law of the case doctrine generally prohibits a court from considering an issue that has already been decided by that same court or a higher court in the same case" and based on the same record and applicable law); *see also Herrington v. Cnty. of Sonoma*, 12 F.3d 901, 904 (9th Cir. 1993) (law of the case doctrine applies if "the issue in question [was] decided explicitly or by necessary implication in the previous disposition") (citation and internal quotations and brackets omitted).

Here, the 2019 ALJ decision found Dr. Kessler's opinion – essentially limiting plaintiff to work consistent with the RFC – "most persuasive" because it was "consistent with other evidence

of record," including plaintiff's activities of daily living. Tr. 19-20. On remand, the ALJ gave similar reasons (albeit accounting for more recent evidence) for affording "significant weight" to the 2017 opinions of Drs. Kaper and Kessler. Tr. 1687-88.

Likewise, the 2019 ALJ decision discounted Ms. Hartline's December 2018 opinion that plaintiff was markedly limited in her ability to work "a full day without needing more than the allotted number or length of rest periods" on the grounds that it is "inconsistent with the nurse's own treatment notes as a whole," which showed that plaintiff "overall . . . did well with treatment" and was able to sustain part-time employment at Nordstrom for 6 months "tolerat[ing] full shifts" and with "no missed days." Tr. 18-20; *see also* Tr. 1235-63 (Ms. Hartline's chart notes), 1374-77 (Ms. Hartline's December 2018 check-box form). The ALJ also noted that Ms. Hartline's opinion was "brief" and "cursory" insofar as it was not accompanied by any narrative explanation or clinical findings. Tr. 20. The Court found the ALJ's reasons for rejecting Ms. Hartline's assessed limitations were legally sufficient and supported by substantial evidence.[6] Tr. 1763-66. On remand, the ALJ gave nearly identical reasons for discounting Ms. Hartline's December 2018 opinion. Tr. 1688.

Regardless, to the extent the law of the case doctrine may not apply, the Court finds the ALJ provided legally sufficient reasons, supported by substantial evidence, for rejecting Ms. Hartline's opinion that plaintiff would need extra breaks.

---

[6] In its 2021 decision, the Court found that the ALJ correctly relied on the old medical regulations in considering the opinion evidence "because the new regulations apply only to claims filed on or after March 27, 2017," and plaintiff's supplemental security income application was lodged before that date. Tr. 1762-63; *see also* Tr. 1688-89 (2022 ALJ decision evaluating Ms. Hartline's and Dr. Kessler's opinion under the old regulations). The Court nonetheless evaluated Ms. Hartline's opinion under both the old medical regulations and the new medical regulations because the 2019 ALJ decision "include[d] certain language from the new medical regulations," finding no error in regard to either. Tr. 1763-66.

Moreover, the 2022 ALJ decision accurately observed that the relevant period started on March 7, 2017 – i.e., the date that plaintiff applied for supplemental security income and attained age 18. Tr. 1680; *see also* 20 C.F.R. §§ 404.350(a)(5), 404.352. Stated differently, plaintiff's records from high school, the Morrison Center, and Dr. Sacks are of "little to no probative value," as they were generated "well before the relevant time." Tr. 1688; *cf. Brown v. Comm'r of Soc. Sec.*, 532 Fed.Appx. 688, 688-89 (9th Cir. 2013) ("ALJ properly rejected the testimony of some older (pre-current application) assessments in favor of more recent opinions") (internal quotations omitted).

Even so, it is well-established that an ALJ need "not . . . formally assess, or even discuss" records that do not contain any concrete functional limitations, as they are "not probative as to what kind of work [the claimant can] perform despite [her] impairment." *Corso  v. Colvin*, 2014 WL 950029, *10 (D. Or. Mar. 11, 2014); *see also Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995) (ALJ may reject a medical opinion that includes "no specific assessment of [the claimant's] functional capacity" during the relevant time period); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999) (ALJ can disregard a medical report that does "not show how [a claimant's] symptoms translate into specific functional deficits which preclude work activity").

Finally, the fact that the state agency consulting sources did not consider records beyond December 2017 (i.e., the date of their review) "is not an error." *Sportsman v. Colvin*, 637 Fed.Appx. 992, 995 (9th Cir. 2016). "Consultative examiners, who evaluate a claimant's condition during the initial phases of the benefits application process, will never have all of the evidence available to the ALJ, whose decision is rendered often years later, at which point the claimant will have amassed additional evidence of his alleged disability." *Jose Z. v. Saul*, 2020 WL 434259, *8

(C.D. Cal. Jan. 28, 2020) (internal record citations omitted). The "value of their opinions" is thus "not diminish[ed]" where "the examiners reviewed the available evidence predating their opinions, and the ALJ considered other doctors' opinions" and the record as a whole. *Id.*; *see also Ruiz v. Colvin*, 638 Fed.Appx. 604, 606 (9th Cir. 2016) (ALJ did not err in giving the greatest weight to non-examining state agency medical consultants where those opinions were "consistent with the greater medical record, progress and treating notes, and [the claimant's] description of her daily activities") (citation omitted).

In sum, plaintiff failed to provide a basis for the Court to diverge from its prior rulings given the dearth of any new arguments or the reliance on additional evidence. *Cf. Melinda M.H. v. Comm'r of Soc. Sec.*, 2021 WL 150012, *5 (D. Or. Jan. 15, 2021) (applying the law of the case doctrine to "preclude [the claimant] from relitigating the ALJ's evaluation of her symptom testimony" where the District Court previously affirmed as to that issue and the claimant cited to no new evidence).

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is AFFIRMED, and this case is DISMISSED.

IT IS SO ORDERED.

DATED this 28th day of May, 2024.


_____
/s/ Jolie A. Russo
Jolie A. Russo
United States Magistrate Judge